JOHN R. SOMMER *et al.*, Plaintiffs-Appellants, v. UNITED SAVINGS LIFE INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—83—0884

Opinion filed November 14, 1984.

Robert J. Oliver and Thomas Z. Hodson, both of Connolly, Hickey & Oliver, of Rockford, for appellants.

Keith Hyzer, of Rockford, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

On October 26, 1979, plaintiffs filed their original single-count complaint in the circuit court of Winnebago County. In it they sought damages against the defendant, United Savings Life Insurance Co., for the fraudulent misrepresentations of the defendant's agents in connection with the sale of two life insurance policies to plaintiff Evelyn Sommer on the life of plaintiff John Sommer.

Defendant moved to dismiss on October 30, 1979, based on the five-year statute of limitations for fraud. (Ill. Rev. Stat. 1981, ch. 83, par. 16, now Ill. Rev. Stat. 1983, ch. 110, par. 13—205.) With the court's permission, plaintiffs filed an amended complaint on February 25, 1982. The amended complaint contained five counts, all based upon the same insurance policy transactions. Count I was based on common law fraud, as was the original complaint, and sought compensatory damages. Count II sought recovery of compensatory damages based on the theory of negligent misrepresentation. Count III alleged a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1975, ch. 121½, par. 262), and asked for compensatory damages. Count IV sought compensatory damages based on a violation of sections 149, 401, 423 and 424 of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, pars. 761, 1013, 1030 and 1031), and Rule 9.17 of the Illinois Department of Insurance. Count V sought punitive damages for the wilful fraud and wilful violations of the above statutes and rule.

The defendant renewed its motion to dismiss, which was granted on September 1, 1983. The judgment stated that count I failed to advance a valid cause of action for fraud and was also barred by the five-year statute of limitations. Likewise, counts II, IV and V were

barred by the five-year statute of limitations. Count III was held barred by the three-year statute of limitations contained in section 10a(e) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1975, ch. 121½, par. 270a(e)). It is from this judgment that the plaintiffs appeal.

The elements of common law fraud are clear; there must be (1) a statement of material fact as opposed to opinion, (2) the statement must be untrue, (3) the party making the statement knows or believes it to be untrue, (4) the person to whom the statement is made believed and relied on it and had a right to do so, (5) the statement was made for the purpose of inducing the other party to act, and (6) the reliance of the person to whom the statement was made led to his injury. *Zickur v. Irmiger* (1973), 15 Ill. App. 3d 805, 807; *Bennett v. Hodge* (1940), 374 Ill. 326, 332.

The trial court, in dismissing count I for failing to state a cause of action, stated:

"I am going to grant the motion to dismiss Count I of the first amended Complaint. The reason is, it appears to the Court that the basis for the fraud charge is set forth and relied upon in Paragraph 6 of Count I.

And it says that as a consequence of the plaintiffs' acts of reliance as set forth in Paragraph 6 as a direct and approximate result of the aforesaid false and fraudulent representations as set forth therein.

5, I don't believe that either Paragraph 5 or 6 state a viable cause of action on the basis of fraud."

The precise reasons for the trial court's dismissal of count I are not clear; it appears that the court felt paragraphs 5 and 6 were insufficient. Paragraphs 5 and 6 state:

"5. Defendant through its agent or agents, having knowledge of the facts alleged in paragraphs 3. and 4. of the First Amended Complaint affirmatively, falsely and fraudulently represented to plaintiff, JOHN R. SOMMER, SR., and to plaintiff, EVELYN M. SOMMER, by her agent, JOHN R. SOMMER, the following:

a. On or about September, 1974, the defendants stated the premiums on a certain policy of insurance for $1,000,000 were less than premiums on his existing policies which provided less coverage.

b. On or about September, 1974, although plaintiff, JOHN R. SOMMER, SR. had advised the company's agent that the insurance applied for was intended to replace insurance with

death benefits of at least $700,000.00, the company's agent completed the application form to indicate the application was not replacement insurance, and when the said plaintiff inquired about that indication, the company, by its agent, stated that was the proper answer for technical reasons the plaintiff could not understand.

c. On or about September, 1974, the defendant stated that, although the policy being offered to the plaintiffs would be too expensive for the purpose it was being sold unless it was a dividend paying policy, the defendant company was then taking action to change the policy to provide for payment of dividends.

d. On or about October 24, 1975, the defendant advised the plaintiffs that the defendant company had taken the action to provide a dividend paying policy, and the plaintiff could benefit from that action, by surrendering the policy purchased from the defendant in 1974, and converting it to a new policy.

e. On or about November, 1975, defendant represented to plaintiff, JOHN R. SOMMER, SR. that he and plaintiff, EVELYN M. SOMMER, could purchase a policy of insurance on the life of JOHN R. SOMMER, SR., with a death benefit as shown in the column headed 'Death Benefit' on Exhibit A attached hereto and with an annual cost as shown in the column headed 'net' in said exhibit.

6. Defendant, through its agent or agents, by the aforesaid affirmative, false and fraudulent misrepresentations fraudulently induced the plaintiffs to act in reliance, as follows:

a. On or about September, 1974, the plaintiffs executed an application for insurance which stated the insurance applied for was not intended as replacement insurance, when in fact, it was;

b. On or about November, 1974, the plaintiffs purchased from defendant, accepted delivery of a policy of insurance providing a death benefit of $1,000,000.00, and paid premiums therefor;

c. On or about December, 1974, plaintiff, JOHN R. SOMMER, SR. cancelled certain policies on his life with death benefits in excess of $700,000.00 and a cash value in excess of $300,000.00;

d. On or about October, 1975; the plaintiffs surrendered and converted the 1974 policy for another policy and paid

premiums therefore; a copy of said policy being attached hereto as Exhibit B;

e. On or about December, 1975, the plaintiffs purchased from defendant, accepted delivery of another policy of insurance providing a death benefit of $1,000,000, and paid premiums, therefor. A copy of that policy is attached hereto as Exhibit C;

f. The plaintiffs failed to purchase other policies of insurance which were less expensive than the defendant's, which were available in the market in 1974 and 1975, but which were no longer available when the defendant revealed the true nature of its policies."

Since paragraph 5 sets forth the fraudulent misrepresentations allegedly made by the defendant's agent and paragraph 6 sets forth plaintiffs' acts of reliance, we will focus primarily upon the first and fourth elements of fraud set forth above, which were apparently the basis for the trial court's dismissal of the complaint.

Illinois law is clear that a misrepresentation as to a future promise or intent will not sustain an action for fraud. (*Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 828-29; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 463-64; *Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 911.) The defendant argues that we should affirm the trial court's dismissal on this basis because paragraph 5 alleges merely the failure to perform future promises and intent and not a misrepresentation of present or past fact as required to state a cause of action.

■ We disagree, however, and hold that paragraph 5 sufficiently sets forth representations of past and existing facts. The misrepresentations alleged were made in the present tense. Specifically, paragraph 5(b) alleges that the defendant's agents told the plaintiffs that the defendant's policies were not replacement policies for technical reasons that the plaintiffs could not understand. Paragraph 5(c) alleges that the defendant's agents told the plaintiffs that the defendant company "was then taking action" (in September of 1974) to change the defendant company's policy to a dividend paying policy. Paragraph 5(d) alleges the defendant's agents told John Sommer that the defendant company "had taken" action (by October 1975) to provide a dividend paying policy and that he (Sommer) could benefit by converting to the new policy. Paragraph 5(e) alleges that the defendant's agents told John Sommer that the plaintiffs could *now* buy an insurance policy with specific benefits at a specific price. All of these paragraphs allege representations of present or past facts and not simply defend-

ant's failure to perform a future promise made to John Sommer some time earlier. When the defendant represents that it has now taken the action it had previously promised to take, the representations are of an existing or past fact.

■ Furthermore, even if we were to characterize the allegations of paragraph 5 as merely failures to perform future promises, we would find the allegations sufficient. Illinois recognizes an exception to the general rule of requiring the misrepresentation to go to past or existing facts in allowing a future promise to be the basis for a claim of fraud where that promise is alleged to be part of a general scheme employed to accomplish the fraud. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320; *Carter v. Mueller* (1983), 120 Ill. App. 3d 314.) Plaintiffs allege such a scheme here.

■ As to the reliance allegations of paragraph 6, defendant argues that since the misrepresentations were made to the husband, John Sommer, while the policy was owned by the wife, Evelyn Sommer, plaintiffs' claims of detrimental reliance cannot stand. We cannot agree. Paragraph 5 of the amended complaint alleges that the misrepresentations were made to Evelyn Sommer through her agent, John Sommer. Further, to hold that John Sommer had no right to rely on the misrepresentations because his wife, Evelyn Sommer, was technically named as owner and signed the application would truly be putting form above substance. We believe the allegations here are sufficient to infer that the plaintiffs were acting together, as a couple, when they purchased these insurance policies and therefore they both had a right to rely on the misrepresentations and both have been injured.

Defendant further argues that the plaintiffs' reliance was not justified because fraud is, in most situations, unavailable to avoid the effect of a written agreement where the complaining party could have discovered the fraud by reading the instrument, and was, in fact, afforded the opportunity to do so. (*Belleville National Bank v. Rose* (1983), 119 Ill. App. 3d 56, 59.) The plaintiffs argue the rule is inapplicable because they have pleaded facts sufficient to show that the fraud in this case could not have been discovered by merely reading the policy.

As the court noted in *Belleville National Bank*, the rule has not been applied in those cases where the alleged fraud would not have been discoverable from reading the terms of the document. (119 Ill. App. 3d 56, 60.) Here, the plaintiffs have alleged a complex scheme operated by the defendant's agents to defraud them. As plaintiffs' counsel explained at oral argument, this scheme involved misrepresen-

tations of the cost of and amount of the policy's death benefits, as alleged in paragraphs 5(e) and 9, based on complex computations involving dividends that the policy would allegedly pay out and loans taken against the policy to pay the premiums and purchase additional insurance, as well as interest to be paid on these loans. The complexity of this scheme and the policy itself make it uncertain, at best, that even a close reading of the policy would have disclosed the alleged fraud to the plaintiffs who were not insurance experts, nor is it clear that the misrepresentations were contrary to the terms of the policy. Most of the misrepresentations appear to have been of extraneous benefits not listed or contradicted by the policy itself.

▇ Since it is not clear that the injured party could have discovered the fraud by reading the document, the defendant's argument is inapplicable. Whether the plaintiffs were justified in relying on the oral representations of the defendant's agents, considering the uncertainty discussed above, is thus an issue for the jury. *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483.

▇ Defendant's last reliance argument is that the plaintiffs could not have relied on any statements made after September 1974, since that is when Evelyn Sommer originally applied for a life insurance policy. This argument, in that it posits there was only one act of reliance by the plaintiffs, must be rejected. The plaintiffs have alleged numerous acts of reliance, many of which occurred after September of 1974. These include canceling their current policies in December of 1974, surrendering their original policy with the defendant company to purchase a new policy with the defendant company some time between October and December of 1975, and paying premiums on these policies to the defendant company. Simply put, the plaintiffs have alleged a policy shuffle scheme involving numerous misrepresentations upon which they repeatedly relied until December of 1975.

▇ Defendant lastly argues we should uphold the trial court's dismissal on the basis that the allegations of damages were insufficient. While this was apparently not the basis for the trial court's dismissal, the defendant did raise this issue in the trial court and in his brief to this court and, therefore, the issue is properly before us. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.

Defendant relies entirely on the case of *Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, which upheld the trial court's dismissal of the plaintiff's fraud complaint. The plaintiff there alleged he was fraudulently induced to refinance his loan with the defendant when one of the defendant's agents misrepresented that he would pay less interest by doing so. Plaintiff alleged that he would ac-

tually be paying $1,000 more in interest because he refinanced. The court held this was conclusory and so insufficient because the plaintiff failed to set out any specific figures which represented his obligations under the original or new note.

The court made clear in *Wolford* that the deficiency in the pleadings did not relate to the amount of damages, but rather to the failure to state any facts supporting the legal conclusion that the defendant's actions injured the plaintiff at all. We interpret this defendant's arguments, therefore, to be that the present plaintiffs have failed to set forth sufficient facts to show that they were injured at all by the defendant's misrepresentations.

In an action for fraudulent misrepresentations in the sale of property, the measure of damages is the difference between the value of the property as it is and what it would have been worth if the representations had been true. (*Schwitters v. Springer* (1908), 236 Ill. 271, 274; *Four "S" Alliance, Inc. v. American National Bank & Trust Co.* (1982), 104 Ill. App. 3d 636, 640.) Therefore, to show injury, plaintiffs must allege facts which show the value of what they received was not equal to the value of what they were promised.

In this case, we feel the plaintiffs have sufficiently alleged such facts. Paragraph 5(e) of the amended complaint alleges that the defendant's agents represented that the plaintiffs could purchase a life insurance policy for the amount of death benefits listed in the death benefits column of Exhibit A at the annual cost listed in the net column of Exhibit A. Exhibit A, which was attached to the plaintiffs' complaint, showed the amount of death benefits would be $964,000 in year No. 2 and rise slowly to $973,000 in year 15. The annual "net" premium for this policy would start at $48,160 for year one, but drop to $21,160 for year two. It would then slowly rise to $30,160 by year 15. The plaintiffs allege in paragraph nine that the premiums did not drop as the defendant's agents said they would under the agents' plan of taking loans against the policy to pay the premiums. As plaintiffs' counsel stated at oral argument, for the premium to drop as the defendant's agents represented they would, the plaintiffs would have to allow the death benefits of the policy to sink from just under $1,000,000 to $542,000 by year No. 15. This clearly shows that the plaintiffs were injured. If they paid the premiums that the defendant's agents represented to them, they would have, after 15 years, a policy with just over one-half of the death benefits promised. To receive the death benefits promised, they would have to pay far more than the defendant's agents represented the cost of this policy to be.

The second basis upon which the trial court dismissed count I was

that it was barred by the five-year statute of limitations governing fraud actions. (Ill. Rev. Stat. 1981, ch. 83, par. 16, now Ill. Rev. Stat. 1983, ch. 110, par. 13—205.) The trial court apparently felt, and the defendant here argues, that the statute of limitations began to run in September of 1974, thus making the original complaint filed in October of 1979, barred. (It is apparently not disputed by defendant that count I of the amended .complaint related back to the filing of the original complaint in October of 1979, since both state a cause of action under the theory of common law fraud.)

■ As we stated earlier, however, the amended complaint alleges a scheme to defraud. The scheme consisted of a series of misrepresentations which occurred from September 1974 to at least November of 1975. This scheme did not end in September of 1974, when the first policy was applied for. The allegations in paragraphs 5(e) and 6(e) clearly allege the misrepresentations were made as late as November of 1975, which induced reliance and injury as late as December of 1975, when the most recent policy was purchased and received. Since the five-year statute of limitations therefore began to run in December of 1975, it had not expired in October of 1979, when the original complaint was filed, and the trial court was in error in holding it barred. *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 1079.

The trial court further dismissed counts II, IV and V on the basis of this same five-year statute of limitations. Since these counts rest on the same factual allegations of count I, we find they are not barred by this statute of limitations for the reasons just stated. The defendant argues, however, that unlike count I, counts II, IV and V of the February 25, 1982, amended complaint did not relate back to the October 26, 1979, filing of the original complaint and therefore, are barred by the statute of limitations.

The sole requirement under our Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b), formerly Ill. Rev. Stat. 1981, ch. 110, par. 46(2)) for allowing a pleading to relate back to the time the original complaint was filed is that the cause of action set up in the amendment grew out of the same "transaction or occurrence" set up in the original pleading. (*Metropolitan Trust Co. v. Bowman Dairy Co.* (1938), 369 Ill. 222, 229.) Defendant is apparently trying to argue here, however, that sections 2—616(a) and 2—616(b) are properly read together as only allowing relation back of claims intended to be brought in the original pleading, so that a new theory of recovery, even if based on the same transaction or occurrence, does not relate back. This argument has previously been rejected in a number of

cases.

In *Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, the original complaint sought subrogation under the Workmen's Compensation Act. After the statute of limitations had run, the plaintiff amended the complaint to lead a theory of common law subrogation. The court specifically rejected the defendant's argument that the amendment did not set up the claim originally intended to be brought and stated:

> "To hold today that the right to amend and the relation back of an amendment, when made, depend upon the subjective frame of mind of the pleader would restore the formalistic approach to amendments to pleadings which the legislature has sought to eliminate. It would minimize the realistic emphasis of paragraph (2) [now (b)] upon identity of 'transaction or occurrence' as the touchstone of relation back." 4 Ill. 2d 273, 289.

A case which is quite similar to the present case is our previous decision in *Lautz v. Pier V* (1979), 68 Ill. App. 3d 290. The plaintiff there filed his complaint seeking recovery of $10,000 he had paid for stock in the Piper Yacht Club and $4,000 for services rendered prior to his termination, on the theories of breach of contract and fraudulent misrepresentation. After the statute of limitations had run, the plaintiff filed a third amended complaint adding a claim under section 13 of the Illinois Securities Act (Ill. Rev. Stat. 1977, ch. 121½, par. 137.13(A)), which allows rescission of a purchase of stock if the sale is consummated in violation of the provisions of the Act. The Act provides that it is a violation to engage in any practice or course of business in connection with the sale or purchase of securities "which works or tends to work a fraud or deceit upon the purchaser ***." Ill. Rev. Stat. 1977, ch. 121½, par. 137.12(F).

In holding that the third amended complaint related back to the filing of the original complaint, we stated:

> "Section 46(2) of the Illinois Civil Practice Act has been consistently interpreted to not bar an amendment under the statute of limitations even though the amendment relies upon either a statutory form of action or a common law form of action for the first time if the cause of action stated in the amendment arises out of the same transaction or occurrence asserted in a prior timely filed complaint. [Citations.]" 68 Ill. App. 3d 290, 291.

■ In the present case, we feel there can be no doubt that counts II, IV and V arise out of the same "transaction or occurrence set up in the original pleading." (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b),

formerly Ill. Rev. Stat. 1981, ch. 110, par. 46(2).) The original complaint set forth a theory of common law fraud based on the plaintiffs' purchase of life insurance policies allegedly induced by the misrepresentations of the defendant's agents. All five counts of the amended complaint are also based on the misrepresentations of the defendant's agents in the sale of these same policies. The amended complaint simply sets forth additional legal theories for recovery based on the same fraudulent sales transactions.

The only remaining issue is whether count III was barred by the statute of limitations. Count III alleged a violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262). The Act supplies its own statute of limitation periods of three years, dated from the time the cause of action accrued. (Ill. Rev. Stat. 1981, ch. 121½, par. 270a.) Since count III is also based on the same factual allegations of count I, the statute of limitations began to run on it in December of 1975 for the reasons stated earlier.

■■ The plaintiff argues that the discovery rule applies to this case so that the statute of limitations runs from the date the misrepresentations were discovered. When a defendant raises the statute of limitations in a motion to dismiss, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statute of limitations. (*Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527.) The plaintiff alleged that, due to the complex scheme involved, the fraud could not have been discovered until some time in 1976 or 1977. This does not meet their burden. Since the original complaint was filed in October of 1979, the plaintiffs must plead facts showing the fraud was not discovered until October of 1976 if the discovery rule is to save count III. The plaintiffs, in alleging only that the fraud could not have been discovered until some time in 1976 or 1977, have failed to do this. Their allegations show the fraud might have been discovered in 1976 before October 26, in which case count III would be barred by the three-year statute of limitations. Since the plaintiffs have failed in their burden of setting forth facts to avoid the statute of limitations, we find the trial court was correct in dismissing count III.

We do not reach the issue of whether count III could have been saved by the application of our concealment statute (Ill. Rev. Stat. 1983, ch. 110, par. 13—215). While the plaintiffs raise the statute as applying to counts II, IV and V, an issue we did not need to reach, they did not raise it as to count III and we, therefore, deem it to have been waived.

For the reasons set forth above, the judgment of the circuit court

of Winnebago County is reversed as to counts I, II, IV and V and affirmed as to count III. This cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

UNVERZAGT and LINDBERG, JJ., concur.