ROBERT FIELD, Adm'r of the Estate of Raymond Ewell Field, Deceased, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF HARRISBURG *et al.*, Defendants-Appellees.

Fifth District   No. 5—91—0706

Opinion filed August 26, 1993.—Rehearing denied September 30, 1993.

Ronald R. Eckiss, of Harris & Lambert, of Marion, for appellant.

Thomas J. Wolf, Jr., P.C., of Harrisburg, for appellee First National Bank of Harrisburg.

Timothy L. Fornes, of Rath & Fornes, of Harrisburg, for appellee Patsy Field Wasson.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Robert Field, administrator of the estate of Raymond Ewell Field, deceased, appeals from an order of the circuit court of Saline County entering partial summary judgments in favor of defendants, the First National Bank of Harrisburg (hereinafter Bank) and Patsy Field Wasson (hereinafter Wasson). Plaintiff requested that the trial court certify three questions for interlocutory appeal, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). The trial court granted plaintiff's motion, and the following three questions were certified for review by this court: (1) whether the alleged course of conduct was one transaction or numerous separate transactions for purposes of the commencement of the running of the applicable statute of limitations; (2) in respect to when the statute of limitations commenced running as to the alleged transaction(s), did the commencement of the running of the statute of limitations occur on the date of the alleged conversion(s) or on the date of the actual discovery of the alleged conversion(s) by the personal representative of the estate of Robert Ewell Field, deceased; and (3) is the appropriate determination of the issue of the statute of limitations in this case to bar the prosecution of any and all claims for alleged acts of conversion that occurred prior to March 23, 1983. We reverse and remand.

I

This is a family dispute involving plaintiff, son of Raymond Ewell Field, and Wasson, daughter of Raymond Ewell Field. Plaintiff filed a two-count complaint against defendants on March 23, 1988, seeking to recover funds that were allegedly improperly obtained by Wasson. Both counts allege that from January 1, 1980, until March 14, 1984, the date of the death of Raymond Ewell Field, Wasson deposited checks endorsed by her father which were restricted by the words "For Deposit Only" into her own account at the Bank. Raymond Ewell Field's name did not appear on the account. Field resided in a nursing home from the late 1970's until his death in 1984. Count I alleged that the actions on the part of defendants amounted to wilful and wanton misconduct, and count II alleged that the actions of defendants constituted conversion.

The evidence deposition of Linda Watson, a vice-president at the Bank, is included in the record. According to Watson, Wasson opened

two accounts at the Bank. The first was account No. 67—2351, opened on July 5, 1974. Originally, account No. 67—2351 was in Wasson's name only. By January 27, 1981, the account was held in the names of Patsy Field Wasson, John F. Wasson, and John F. Wasson II. A second account, No. 67—2300, was also held in the name of Wasson at the Bank. Numerous checks made payable to Raymond E. Field were deposited into both accounts by Wasson. Most of Raymond E. Field's checks went into account No. 67—2351. Linda Watson testified about checks that were drawn on the account. For example, a check for $125 made payable to "Cash" was cashed by the Bank. Wasson also made payments out of that account on notes on her car and on a note held by her son. Linda Watson further testified that cancelled checks and deposit slips went to Wasson. None would have been sent to Raymond E. Field, as his name did not appear on the accounts. As far as Watson knew, Raymond E. Field never did any banking through her employer.

Plaintiff knew that his sister, Wasson, took care of their father's business affairs and had been doing so since his father entered a nursing home in the late 1970's. Between January 1, 1980, and March 14, 1984, plaintiff's father received monthly pension checks from the Veterans' Administration, the Social Security Administration, and the Black Lung Fund. These checks were delivered in his father's name to Wasson's mail box. Raymond E. Field did not have a post office box. Prior to his father's death, plaintiff did not know about the accounts at the defendant Bank and did not know that his father's name was not on the accounts to which his checks were deposited. Plaintiff agreed that his father was mentally sharp up until his death. Plaintiff and his father did not discuss financial affairs. Plaintiff did receive gifts out of the accounts in question from his father, which were signed by Wasson. Plaintiff never questioned why such checks were signed by Wasson but just accepted that this was the way it was done.

Both defendants filed motions for partial summary judgment, arguing that all alleged acts of conversion that arose prior to March 23, 1983, are barred pursuant to the applicable five-year statute of limitations. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) The trial court agreed and granted partial summary judgments for both the Bank and Wasson. Plaintiff appeals from those orders of the trial court granting partial summary judgments for defendants, and we are asked to consider the three questions previously set forth.

## II

The first question we are asked to address is whether the alleged

course of conduct was one transaction or numerous separate transactions for purposes of commencement of the running of the applicable statute of limitations.

Plaintiff argues that the complaint filed herein clearly alleges a four-year course of conduct in which both defendants allowed restrictively endorsed pension checks for Raymond E. Field to be deposited into accounts that did not bear his name. According to plaintiff, the deposits were made on a monthly basis, in the same manner, to the same accounts over a four-year period, thus establishing an ongoing "scheme, plan, conspiracy or the like." Plaintiff discovered this course of conduct after his father's death on March 14, 1984. Plaintiff commenced this action on March 23, 1988, within five years of his father's death, thus within the applicable five-year statute of limitations. (See Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) Defendants respond that each allegedly converted check constituted a separate cause of action and no facts were alleged or shown which would transform the deposits into anything more than a series of isolated transactions. We agree with plaintiff that the alleged course of conduct was one continuous transaction or scheme for purposes of the commencement of the statute of limitations.

■ Section 13—205 of the Code of Civil Procedure provides for a five-year statute of limitations to recover the possession of personal property or damages for the detention or conversion thereof. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) While we are unable to find any cases in which a series of checks cashed is said to constitute a single transaction for purposes of the running of the statute of limitations, we have found some cases to give us guidance in this area. For example, the law is clear that where a tort involves a continued repeated injury, the limitation period does not begin until the date of the last injury or when the tortious act ceased. (*Gass v. Metro-East Sanitary District* (1989), 186 Ill. App. 3d 1077, 1084, 542 N.E.2d 1229, 1234; *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39; *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 300 N.E.2d 331.) Moreover, a somewhat similar situation to the one presented here is found in *Sommer v. United Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808, 471 N.E.2d 606. In that case, the plaintiffs in count I of their complaint alleged a scheme by their insurance company to defraud. The scheme consisted of a series of misrepresentations which occurred from September 1974, when the first policy was issued, to at least November 1975. The plaintiffs' complaint alleged misrepresentations which induced reliance and injury as late as December 1975. (*Sommer*, 128 Ill. App. 3d at 817, 471 N.E.2d at

613.) The *Sommer* court determined that under this alleged scheme, the applicable five-year statute of limitations did not begin to run until December 1975, and thus the complaint filed in October 1979 was not barred. (*Sommer*, 128 Ill. App. 3d at 817, 471 N.E.2d at 613-14.) Likewise, under Federal antitrust laws it is well settled that where a continuing "conspiracy" is involved the statute of limitations under the appropriate antitrust law begins to run from the date of the last overt act in furtherance of the conspiracy which allegedly causes damage to the plaintiff. See, *e.g., Garelick v. Goerlich's, Inc.* (6th Cir. 1963), 323 F.2d 854; *Saunders v. National Basketball Association* (N.D. Ill. 1972), 348 F. Supp. 649.

■ We have reviewed plaintiff's two-count complaint herein. Contrary to the trial court's determination, we believe plaintiff alleged facts sufficient to show an ongoing "scheme, plan, conspiracy, or the like" which would transform the deposits into what could be considered a single transaction. The checks were cashed by Wasson over a continuous four-year period, but every one was made payable to her father, Raymond E. Field. Furthermore, all the checks were restrictively endorsed with the words "For Deposit Only." Nevertheless, the accounts into which these checks were deposited did not bear Raymond E. Field's name, and he received no information concerning the accounts from the defendant Bank. Therefore, in answer to the first certified question, we hold that the alleged course of conduct is one transaction and that the statute of limitations did not begin to run until the date on which the last pension check was cashed by Wasson.

III

■ Our determination of the first certified question also determines our answer to the third certified question, namely, that it is not appropriate to bar any and all claims for alleged acts of conversion that occurred prior to March 23, 1983. The trial court ruled that because plaintiff's complaint was not filed until March 23, 1988, all banking transactions that occurred prior to March 23, 1983, were barred by the five-year statute of limitations. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) Because we have determined that defendants' actions constituted one ongoing transaction, we believe the statute of limitations did not commence running until the last of Raymond E. Field's pension checks was cashed by Wasson. Plaintiff, therefore, filed his complaint well within the five-year statute of limitations, and none of it should be barred. Accordingly, the trial court erred in granting partial summary judgments for defendants.

## IV

Because of our determination as to certified questions (1) and (3), we need not answer the second certified question. When it becomes apparent that an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, the court should not resolve the question merely for the sake of setting a precedent to govern subsequent cases. (*Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 251, 384 N.E.2d 1309, 1311.) Here, it does not matter when the alleged wrong was discovered by plaintiff because we do not believe there is a statute of limitations problem. We therefore decline to answer certified question number (2).

For the foregoing reasons, the order of the circuit court of Saline County granting partial summary judgments for defendants is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

CHAPMAN, P.J., and RARICK, J., concur.