FIRST DIVISION
APRIL 23, 2007

No. 1-06-1721

| | | |
|---|---|---|
| THE KIDNEY CANCER ASSOCIATION, an Illinois Not-For-Profit Corporation, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05 L 011613 |
| NORTH SHORE COMMUNITY BANK AND TRUST COMPANY, an Illinois Corporation, | ) ) ) ) ) | The Honorable Dennis J. Burke, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

This is a permissive interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The two certified questions before us are:

> (1) Whether a series of conversions of negotiable instruments over time can constitute a continuing violation within the meaning of the Illinois Supreme Court's decision in Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 770 N.E.2d 177

(2002), for the purpose of determining when the statute of limitations runs; see also <u>Rodrigue v. Olin Employees Credit Union</u>, 406 F.3d 434 (7th Cir. 2005); and

(2) Whether the "discovery rule" applies to a series of conversions of negotiable instruments over time for the purpose of determining when the statute of limitations runs.

For the reasons that follow, we answer both questions in the negative.

BACKGROUND

In October 2005, the plaintiff, Kidney Cancer Association, sued the defendant, North Shore Community Bank & Trust Company, for negligence and conversion. The verified complaint alleged that in July 1997, the Bank permitted Carl F. Dixon, the executive director of the Kidney Cancer Association, to open a savings account in the Association's name. The plaintiff asserted that Dixon lacked authority to open such an account. Between July 1997 and December 2002, Dixon deposited more than $330,000 worth of donation checks made payable to the Association into that account. During that time, Dixon withdrew, for cash,

all of the deposited donations less 54 cents. Dixon purportedly made the withdraws in his name, not in the name of the Association, using nonnegotiable savings account withdrawal slips.

The plaintiff asserted that the Bank acted in a commercially unreasonable manner in permitting Dixon to open the account and withdraw the funds because the Bank: (1) failed to ensure the Association had authorized Dixon to open the account; (2) failed to verify the accuracy of the documents Dixon supplied to the Bank when he opened the account; (3) sent the account statements to Dixon's personal post office box rather than to the Association; and (4) permitted Dixon to withdraw the deposited funds for cash. Because the Bank did not verify Dixon's authority to open the account and because Dixon lacked that authority, the Bank's control and possession of the checks made payable to the Association and deposited in that account were unauthorized and wrongful. Specifically, the plaintiff alleged, "The Bank wrongfully and in an unauthorized manner controlled and possessed the Association's funds because it allowed donation checks made payable to the Association to be deposited into the Savings Account without its consent."

The Bank moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615

**3**

No. 1-06-1721

(West 2004)).  In March 2006, the trial court granted the Bank's
motion.  The court dismissed the negligence count without
prejudice, finding that the defendant failed to state a cause of
action under the Moorman doctrine (Moorman Manufacturing Co. v.
National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443 (1982)).  As to
the conversion count, the court dismissed it with prejudice,
finding that the action was time-barred in that it was filed
after the three-year statute of limitations for conversion had
run.  The court cited Belleville Toyota and Rodrigue to support
its finding that the conversion was not a single, continuing
violation but that each withdrawal supported a separate cause of
action.

The plaintiff filed a motion, asking the trial court to
certify its holding for immediate appeal under Supreme Court Rule
308 (155 Ill. 2d R. 308).  In June 2006, the court entered an
order certifying the questions set out above.  In July 2006, this
court granted this interlocutory appeal.

ANALYSIS

"An instrument is *** converted if it is taken by transfer,
other than a negotiation, from a person not entitled to enforce
the instrument or a bank makes or obtains payment with respect to
the instrument for a person not entitled to enforce the
instrument or receive payment."  810 ILCS 5/3-420(a) (West 2004).

**4**

No. 1-06-1721

Section 3-118 of the Illinois Uniform Commercial Code (UCC) provides that an action for conversion must be commenced within three years after the cause of action accrues. 810 ILCS 5/3-118(g) (West 2004). Although the plaintiff contends that the three-year statute of limitations does not apply to its "common-law conversion claim," the plaintiff did not raise that argument in its Rule 308 motion and it was not certified by the trial court. That issue, therefore, is not properly before this court. See Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange, 325 Ill. App. 3d 970, 977, 758 N.E.2d 353 (2001) ("The scope of our review pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) is strictly limited to the questions certified by the trial court"). Nevertheless, we are aware of only one case that holds that the statute of limitations period for conversion of a negotiable instrument is other than three years as set forth in section 3-118 of the UCC. That case is Field v. First National Bank of Harrisburg, 249 Ill. App. 3d 822, 619 N.E.2d 1296 (1993), upon which the plaintiff relies for its continuing violation theory and which we decline to follow as explained below.

I. Continuing Violation

"Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against

**5**

another. [Citations.] However, under the 'continuing tort' or 'continuing violation' rule, 'where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.' [Citations.]" Feltmeier v. Feltmeier, 207 Ill. 2d 263, 278, 798 N.E.2d 75 (2003).

The plaintiff cites Field and Haddad's of Illinois v. Credit Union 1 Credit Union, 286 Ill. App. 3d 1069, 678 N.E.2d 322 (1997), to support its claim that the series of conversions, carried out from July 1997 through November 2002, were part of a continuing scheme or plan.

In Field, the plaintiff sought to recover funds that were improperly obtained by his sister from January 1980 through March 1984. The plaintiff alleged that his sister deposited their father's pension checks, which were endorsed by their father but restricted by the words "For Deposit Only," into her personal account, and that she drew on that account for her personal needs. Field, 249 Ill. App. 3d at 823-24. The trial court granted the defendant bank's motion for summary judgment on the conversion count, finding that it was barred by the applicable statute of limitations.

On appeal, the plaintiff argued that, for the purposes of the statute of limitations, the alleged course of conduct was one

continuing transaction, not numerous separate transactions.
Field, 249 Ill. App. 3d at 824-25.  The plaintiff argued that
because the deposits were made on a monthly basis, in the same
manner, to the same accounts over a four-year period, this
evidenced an ongoing "scheme, plan, conspiracy or the like."
Field, 249 Ill. App. 3d at 825.  The Field court agreed with the
plaintiff, explaining that although it was "unable to find any
cases in which a series of checks cashed is said to constitute a
single transaction for purposes of the running of the statute of
limitations," because the plaintiff alleged a tort that involved
a "continued repeated injury," the limitations period did not
begin to run until the date of the last injury or when the
tortious act ceased.  Field, 249 Ill. App. 3d at 825.  The court
based its determination on the following facts: (1) the checks
were cashed by plaintiff's sister over a continuous four-year
period; (2) each check was made payable to their father; and (3)
all of the checks were restrictively endorsed with "For Deposit
Only."  The checks, however, were deposited in an account that
did not bear the payee's name and he received no information
about the accounts from the defendant bank.[1]  Field, 249 Ill.

---

[1] The Field court's reliance on an ongoing "scheme, plan,
conspiracy or the like" for finding a continuing violation may

**7**

No. 1-06-1721

App. 3d at 826. The Field court further treated the conversion complaint as a common-law conversion with the applicable five-year statute of limitations.[2] Field, 249 Ill. App. 3d at 826.

In Haddad's of Illinois, the plaintiff alleged that from 1988 until 1990, one of its employees, Raychouni, forged endorsements on checks payable to the plaintiff and deposited them into an account at the defendant bank. The plaintiff sued the defendant bank for conversion of the checks it paid over the

---

have resonance with regard to the plaintiff's sister in Field or Dixon here. We find none with regard to the Bank here; nor have we found a supporting allegation in the complaint against the Bank.

[2] Consequently, the Field court did not consider the purpose and policy of the Uniform Commercial Code regarding negotiable instruments. See Rodrigue, 406 F.3d at 447 (same reasons to reject application of discovery rule to claims of check conversion also serve to reject application of continuing violation rule); Copier Word Processing Supply, Inc. v. Wesbanco Bank, Inc., 640 S.E.2d 102, 111-12 (W. Va. 2006) (purpose and policy of UCC serve as a basis to reject the application of the continuing violation rule as well as the application of the discovery rule in conversion of negotiable instruments.

**8**

endorsement forged by Raychouni. The trial court granted the defendant's motion for summary judgment, holding that the plaintiff's action was barred by the statute of limitations. Haddad's of Illinois, 286 Ill. App. 3d at 1070.

On appeal, the plaintiff argued that the cashing of the checks was part of an ongoing plan constituting a single transaction for purposes of the commencement of the statute of limitations. The Haddad's of Illinois court first addressed whether the statute of limitations period was five or three years. The appellate court concluded: "The proper statute of limitations for actions for conversion of negotiable instruments is three years as specifically set forth in the [Uniform Commercial Code.]" Haddad's of Illinois, 286 Ill. App. 3d at 1072. Regarding the applicability of the continuing tort doctrine, the Haddad's of Illinois court stated, citing Field, that "[w]hen a series of checks is cashed as part of an ongoing scheme or plan, the plan constitutes a single transaction for purposes of the commencement of the statute of limitations." Haddad's of Illinois, 286 Ill. App. 3d at 1072. The court explained that "if plaintiff alleged facts sufficient to show a plan for Raychouni's conversion of checks ***, the date on which the last check was deposited would govern as the date for all the checks for purposes of the statute of limitations." Haddad's of

No. 1-06-1721

<u>Illinois</u>, 286 Ill. App. 3d at 1072.  However, because the plaintiff did not file its complaint until more than three years after the last check was deposited, the court did not decide whether the plaintiff made such a showing.  <u>Haddad's of Illinois</u>, 286 Ill. App. 3d at 1073.

In this case, the trial court acknowledged <u>Field</u> and <u>Haddad's of Illinois</u>, but it relied on the supreme court's holding in <u>Belleville Toyota</u> when it found that the series of conversions were not a continuing violation.  In <u>Belleville Toyota</u>, the plaintiff alleged that the defendants violated the Motor Vehicle Franchise Act (Act) (815 ILCS 710/1 <u>et</u> <u>seq</u>. (West 2004)) and breached a number of dealership agreements between the parties.  In 1980, the parties entered into their first six-year dealership agreement.  Under the agreement, the plaintiff would submit orders to the defendants for Toyota vehicles.  In the event of shortages, the agreement provided that the defendant would allocate vehicles to the plaintiff based on the plaintiff's sales performance.  When that agreement expired, the parties entered into one-year agreements in 1986 and 1987; in 1988, they entered into a six-year agreement.  Under the 1986, 1987, and 1988 agreements, the defendants were required to use their "best efforts" to provide the plaintiff with vehicles.  In the event of shortage, the defendants agreed to allocate vehicles among their

**10**

dealerships in a "fair and equitable manner." Belleville Toyota, 199 Ill. 2d at 330.

In 1989, the plaintiff sued the defendants alleging, inter alia, that the defendants failed to allocate Toyota vehicles in the quantities contractually required, that these allocations violated provisions of the Act, and that the defendants fraudulently concealed their conduct. Belleville Toyota, 199 Ill. 2d at 330.

On appeal, the defendants argued that the plaintiff's claim was time-barred under the Act and that the trial court erroneously employed the continuing violation rule to postpone the running of the statute of limitations. Belleville Toyota, 199 Ill. 2d at 345. The supreme court considered its decision in Cunningham v. Huffman, 154 Ill. 2d 398, 609 N.E.2d 321 (1993), where it held that a medical malpractice case was not barred by the statue of repose where the plaintiff demonstrated a continuous and unbroken course of negligent treatment, which constituted one continuing wrong. Belleville Toyota, 199 Ill. 2d at 346, citing Cunningham, 154 Ill. 2d at 406. The statute of repose required a plaintiff to file his cause of action no more than four years after "the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2004). The court held that if the

**11**

term "occurrence" was limited to a single event, unjust results would follow:

> "'[I]f the word occurrence were interpreted to mean a single isolated event, patients who discovered that they were gravely injured due to negligent or unnecessary exposure to X-ray radiation or administration of medication over a span of years might be able to recover little, if any, in the way of damages.  This would be so because a single dosage of radiation or medicine might be harmless, whereas treatment over time might be either disabling or even fatal.'" Belleville Toyota, 199 Ill. 2d at 346, quoting Cunningham, 154 Ill. 2d at 405.

The Belleville Toyota court, however, held that the defendants' continuing violations of the Act were not comparable to the cumulative medical negligence in Cunningham.  The court pointed out that in Cunningham, it "did not adopt a continuing violation rule of general applicability in all tort cases," but based its decision on the interpretation of the statute of repose.  Belleville Toyota, 199 Ill. 2d at 347.

In its complaint, Belleville Toyota challenged the individual vehicle allocations under the dealership agreements. The supreme court held that each allocation was the result of

discrete decisions by the defendants. Although the allocations were repeated, the court held that it "cannot conclude that defendants' conduct somehow constituted one, continuing, unbroken, decade-long violation of the Act." Belleville Toyota, 199 Ill. 2d at 348-49. Because each allocation constituted a separate violation of the Act, each violation supported a separate cause of action. Therefore, the only violations properly before the court were those that occurred within the four-year period before the plaintiff filed its complaint.

The supreme court again considered the continuing violation rule in Feltmeier. The Feltmeiers were married in 1986 and divorced in 1997. In 1999, the former wife sued her former spouse for intentional infliction of emotional distress, alleging that he engaged in a pattern of domestic abuse from the time they were married until 1999. Feltmeier, 207 Ill. 2d at 265. The defendant moved to dismiss the complaint, arguing that it was barred by the two-year statute of limitations for personal injuries.

The court explained that a continuing violation "does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes." (Emphasis added.) Feltmeier, 207 Ill. 2d at 279. "A continuing

**13**

violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. [Citations.] Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." Feltmeier, 207 Ill. 2d at 278-79.

Although the plaintiff alleged conduct -- assault, battery, defamation -- that could have given rise to separate and distinct causes of action, the plaintiff alleged, and the defendant's conduct as a whole, stated a cause of action for intentional infliction of emotional distress. Feltmeier, 207 Ill. 2d at 281. It was the "'pattern, course and accumulation'" of the defendant's acts that made the conduct sufficiently extreme to be actionable and to hold otherwise would have been logically inconsistent, as it is often the cumulative nature of the acts that give rise to a cause of action for intentional infliction of emotional distress. Feltmeier, 207 Ill. 2d at 282, quoting Pavlik v. Karnhaber, 320 Ill. App. 3d 731, 746 (2001). The court held that the date of the last act was the proper date to begin the running of the statute of limitations because it was otherwise impossible to pinpoint the specific moment when enough conduct had occurred to be actionable. Feltmeier, 207 Ill. 2d at

**14**

No. 1-06-1721

284.

The only post-Belleville Toyota case that specifically addressed the continuing violation rule as it applied to a series of conversions was the Seventh Circuit's decision in Rodrigue (applying Illinois law). In that case, the plaintiff's employee, Carol Wiltshire, stole 269 reimbursement checks written to the plaintiff from her patients' insurers over a six-year period. Wiltshire fraudulently endorsed the checks over to herself and presented them at the defendant credit union, where they were accepted. After the plaintiff discovered the embezzlement, she filed a lawsuit, in federal court, against the credit union. Rodrigue, 406 F.3d at 435.

The defendant argued "that the conversion of the checks did not amount to a single or continuous injury under Illinois law and that the statute of limitations for conversion began to run with the negotiation of each check[.]" Rodrigue, 406 F.3d at 436. The Seventh Circuit, noting that the Illinois Supreme Court had not yet considered whether the continuing violation rule should apply to a cause of action for the "serial conversion of multiple negotiable instruments," predicted that the court would find no continuing violation. Rodrigue, 406 F.3d at 441.

The court considered both Field and Haddad's of Illinois, but applied the analysis in Belleville Toyota, reiterating that

**15**

"the continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." Rodrigue, 406 F.3d at 443. The court explained that like the transactions in Belleville Toyota, each conversion was a separate cause of action, not at all dependent on any other conversion. Specifically, the court held:

> "Unlike a cause of action for medical
> malpractice based on a course of negligent
> treatment with cumulative effects, or a cause
> of action for the intentional infliction of
> emotional distress arising from a course of
> tortious acts considered as a whole, [the
> plaintiff's] claim for conversion does not
> depend on the cumulative nature of either
> Wiltshire's or [the defendant's] acts.
> Rather, a cause of action for conversion
> arose each time Wiltshire cashed or deposited
> one of the checks she had embezzled. ***
> Whether Wiltshire had negotiated one check or
> 1000, [the plaintiff] had a valid cause of
> action for conversion; nothing about the
> repeated or ongoing nature of Wiltshire's

**16**

conduct affected the nature or validity of [the plaintiff's] suit, beyond increasing her damages. Moreover, in contrast to a claim that arises from a cumulation of wrongful acts, a claim for conversion does not pose undue difficulty for the victim in identifying the nature, origin, and extent of her injury." Rodrigue, 406 F.3d at 443.

The Seventh Circuit further held that there were no potentially unjust results in applying the statute of limitations because the plaintiff's belated discovery of her injury had little or nothing to do with the nature of her claim. Rodrigue, 406 F.3d at 444.

We find Rodrigue persuasive. As our supreme court made clear in Belleville and Feltmeier, the validity of the continuing violation rule is dependent upon the cause of action alleged. While the complaint here alleged a serial conversion of negotiable instruments by Dixon, it cannot be denied that a single unauthorized deposit of a donor's check in the account opened by Dixon in 1997 gave the Association the right to file a conversion action. The Association's claim that Dixon repeated this conduct through 2002 based on identical conversions following his initial deposit in 1997, serves no more than to "toll" the statute of limitations under the guise of a continuing

**17**

violation. Where, as here, each discrete act by Dixon of wrongfully depositing a donor's check into the account provided a basis for a cause of action, we need not look to "the defendant's conduct as a continuous whole for prescriptive purposes." Feltmeier, 207 Ill. 2d at 279. That the conversions spanned a period of five years is irrelevant as "nothing about the repeated or ongoing nature of [Dixon's] conduct affected the nature or validity of [the plaintiff's] suit." See Rodrigue, 406 F.3d at 443; see also Belleville Toyota, 199 Ill. 2d at 348-49.

Although Belleville Toyota did not explicitly overrule or discuss the facts in Field or Haddad's of Illinois, the supreme court's opinion sufficiently clarified when the continuing violation rule is applicable -- where the pattern, course, and accumulation of the defendant's acts are relevant to the cause of action.[3] Belleville Toyota, 199 Ill. 2d at 348-49. No mention

---

[3] We note that while the appellate court's decision in Belleville (Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc. 316 Ill. App. 3d 227, 244, 738 N.E.2d 938 (2000)) cited the Field decision, the supreme court did not in reversing the appellate court. In this regard, we place little significance on the supreme court's seemingly approving cite to Field in Feltmeier (Feltmeier v. Feltmeier, 207 Ill. 2d 263, 278,

**18**

was made of an ongoing "scheme, plan, conspiracy or the like" in Belleville Toyota as relied upon by the Field court. See Field, 249 Ill. App. 3d at 826. In this case, where the Bank negotiated numerous checks over a five-year period, the pattern, course, and accumulation of the acts are not relevant to the Association's cause of action. We, therefore, answer the first question in the negative.

## II. Discovery Rule

The second certified question asks whether the discovery rule applies to a series of conversions of negotiable instruments for the purpose of determining when the statute of limitations runs. We need only look to the Fourth District court's opinion in Haddad's of Illinois for the answer. "The damage to the plaintiff occurs [when the instrument is negotiated] and the applicable statute of limitations then allows three years from that date to discover the conversion in the ordinary course of bookkeeping. Absent fraudulent concealment on the part of the defendant, this should allow ample time for a plaintiff to discover any injury. Therefore, we find the discovery rule does not apply to causes of action for conversion of negotiable instruments." Haddad's of Illinois, 286 Ill. App. 3d at 1075.

---

798 N.E.2d 75 (2003)).

**19**

Although Illinois courts have applied the discovery rule to a number of different tort causes of action, it is only applicable in conversion-of-negotiable-instrument cases, as made clear by Haddad's of Illinois, when there are allegations of fraudulent concealment. Haddad's of Illinois, 286 Ill. App. 3d at 1073. Citing numerous authorities from outside of Illinois, that court explained that under the Uniform Commercial Code, liability on negotiable instruments cannot be open-ended. Haddad's of Illinois, 286 Ill. App. 3d at 1073-74. In addition, the victim of the conversion is in the best position to easily and quickly detect the loss and take appropriate action. Thus, while it may be harsh not to apply the discovery rule in certain cases, the rule is inapplicable absent fraudulent conduct. Haddad's of Illinois, 286 Ill. App. 3d at 1075.

In this case, the plaintiff contends that it was not in the best position to detect the fraud because it had no knowledge of the account opened in its name and it did not receive any statements showing account activity. We do not, however, find the plaintiff's argument compelling. The fraud was in the diversion of the donation checks, not in the opening of the account in the Association's name by Dixon, or in the absence of the Association's address for purposes of receiving statements of the account. The fraud involved Dixon stealing $330,000 worth of

donation checks from the Association over a five-year period. The Association, more than the Bank, was in a better position to establish internal controls for its donations. Because the plaintiff alleges no fraudulent conduct against the Bank, we hold that the discovery rule is inapplicable and answer the second question in the negative.

Certified questions answered; order affirmed.

CAHILL and R. GORDON, JJ., concur.