FEDERAL SIGNAL CORPORATION, Plaintiff-Appellant, v. THORN AUTOMATED SYSTEMS, INC., a/k/a Thorn Automated Systems, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—97—0087

Opinion filed March 31, 1998.

Mark W. Monroe, James Ozog, and Jennifer K. Eckert, all of Momkus, Ozog & McClusky, of Downers Grove, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard D. Murphy, Jr., of counsel), for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff, Federal Signal Corporation, alleged that defendant, Thorn Automated Systems, tortiously induced a third party to breach its contract with plaintiff. Plaintiff filed suit five years after the initial breach of contract and obtained service of process on defendant four months later, after completing a deposition of one of defendant's employees. The trial court dismissed the case with prejudice for failure to obtain service of process diligently.

On April 20, 1990, plaintiff sold its subsidiary, Autocall, Inc., to

Wormald U.S., Inc. Plaintiff guaranteed payment of Autocall's accounts receivable, promising to pay any amounts shown on the closing balance sheet as accounts receivable which remained uncollected as of April 30, 1991. Wormald agreed to use collection methods consistent with Autocall's past efforts to collect the accounts receivable. Plaintiff agreed to give Autocall's president, James Frankow, substantial stock options in plaintiff, but the payment depended upon Frankow using his best efforts to collect the receivables.

On December 5, 1990, Wormald sold Autocall to Thorn. Wormald agreed to repurchase, at face value, any accounts receivable that remained uncollected 120 days after the closing, if Thorn elected to sell the account back to Wormald. However, Thorn did not agree to continue Autocall's past collection policies, and the contract detailed the lesser efforts Thorn intended to make. On December 6, 1990, Thorn management told Autocall personnel to reduce their efforts to collect receivables, including those plaintiff and Wormald guaranteed.

On February 14, 1991, Frankow called plaintiff's treasurer, Robert Racic, and told him Thorn had directed Autocall personnel to spend no time or effort on collecting receivables. Racic promptly discussed the call with plaintiff's general counsel, Kim Wehrenberg. Frankow wrote to Racic on March 13, 1991, informing him that Thorn had disbanded Autocall's collection department.

Wormald sued plaintiff on December 20, 1993, alleging that as of April 30, 1991, Autocall had failed to collect $513,918 of the accounts receivable that plaintiff guaranteed. Plaintiff answered that Autocall failed to use collection efforts consistent with its past practices, in violation of their contract. Wormald's complaint and plaintiff's response are not part of the lawsuit on appeal.

The case on appeal commenced on December 4, 1995, when plaintiff filed a complaint against Thorn, alleging that Thorn tortiously induced Wormald to breach its contract with plaintiff. After filing the suit, but before serving defendant, counsel for plaintiff had numerous conversations with counsel for defendant concerning Frankow's calls and letters to plaintiff. Plaintiff wished to depose Frankow, and defendant's counsel indicated that Frankow's deposition testimony would be substantially inconsistent with the calls and letters. Defendant's counsel knew the deposition could have significant effect on Wormald's suit against plaintiff, but he knew nothing of the suit plaintiff had filed against defendant.

Counsel for plaintiff deposed Frankow in the presence of Wormald's counsel on April 2, 1996; defendant's counsel did not appear. Frankow swore that defendant instructed him to give collection of receivables Wormald and plaintiff guaranteed low priority. Auto-

call's efforts thereafter failed to meet the requirements of Wormald's contract with plaintiff.

Plaintiff procured a summons for defendant on April 19, 1996, and defendant received service on April 25, 1996. Defendant's counsel immediately faxed a letter to plaintiff's counsel objecting to the deceptive failure to mention the lawsuit in their ongoing discussions of discovery for Wormald's lawsuit. On August 14, 1996, defendant discharged its attorneys and hired instead the attorneys who represented Wormald, including the attorney who attended plaintiff's deposition of Frankow.

Defendant moved to dismiss the lawsuit pursuant to Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)), arguing that plaintiff did not act with reasonable diligence to obtain service on defendant. Defendant claimed that because the lack of diligence occurred after the applicable statute of limitations expired, the case should be dismissed with prejudice.

In opposition to the motion plaintiff presented the affidavit of Wehrenberg, who swore that plaintiff did not see a copy of defendant's contract with Wormald until May 28, 1991. Plaintiff did not receive documentation of outstanding receivables until June 6, 1991, and before that plaintiff could not make even a preliminary determination of its damages. But in his deposition Wehrenberg admitted that Frankow called plaintiff on February 14, 1991, to report defendant's new policy curtailing Autocall's collection efforts. He said that he and Racic needed more information before proceeding in response to Frankow's call.

An attorney for plaintiff also submitted an affidavit stating that without Frankow's deposition, plaintiff could not resolve inconsistencies in the reports it received from defendant's attorneys, Wormald's attorneys, and Frankow. The attorney swore that defendant's attorneys never asked whether plaintiff had sued defendant.

The trial court found that plaintiff delayed service "intentionally *** to effect tactical and strategic advantage." Plaintiff knew where it could easily serve defendant. Plaintiff's concern about the veracity of its complaint, needing confirmation from Frankow's deposition, did not constitute a special circumstance justifying the delay in service. The court held that plaintiff did not exercise due diligence. The court also found that the limitations period expired on December 5, 1995, five years after the initial breach defendants allegedly induced. Accordingly the court dismissed the complaint with prejudice.

The parties agree that a five-year limitations period applies to this case. 735 ILCS 5/13—205 (West 1994). Plaintiff argues that the period began to run either on April 30, 1991, when Thorn stopped its

continuing tortious behavior inducing breach of contract to plaintiff's continuing detriment, or on June 6, 1991, when plaintiff first discovered its damages.

■ Our supreme court recently restated applicable principles:

> "For most torts, the cause of action usually accrues when the plaintiff suffers injury. [Citations.] For contract actions and torts arising out of contractual relationships, though, the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132 (1995).

A continuing injury delays commencement of the limitations period for most torts until cessation of the tortious behavior or the last injury. *Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 763, 574 N.E.2d 129 (1991). But such a delay applied to contractual torts would contravene the policy reasons for the distinction. The plaintiff, knowing of the breach of contract, could allow damages to accumulate with each passing day the defendant failed to comply, and claim a continuing injury. Our supreme court has instead adopted a rule for contractual torts that "encourages the party to act within five years of the breach rather than to delay until damages increase." *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill. 2d 126, 132, 370 N.E.2d 804 (1977). Accordingly, we hold that the delay in the commencement of the limitations period for continuing torts does not apply to contractual torts.

■ Tortious interference with contract is a contractual tort, for which the limitations period generally begins to run on the date of breach. *Howard T. Fisher & Associates, Inc. v. Shinner Realty Co.*, 24 Ill. App. 2d 216, 164 N.E.2d 266 (1960). In *Fisher* the court said:

> "The plaintiff urges that the statute of limitations cannot be invoked because *** it is alleged that [the defendant] 'continuously' to the present date 'aided, abetted, induced, procured and caused [cod]efendant ***' to breach the contract. We cannot follow that reasoning. It is apparent from the record that the breach of the contract occurred on January 19, 1950. Either at or before that time [the defendant's] alleged tortious conduct in inducing the breach must have taken place. It is a contradiction in terms to say that there can be a continuous procuring of a breach of a contract after the breach has actually occurred." *Fisher*, 24 Ill. App. 2d at 226.

Accordingly, the court found the cause of action barred.

Plaintiff here stated a cause of action for tortious interference with contract. Because this is a contractual tort, the limitations period is not delayed to the end of the continuing breach of contract. We reject plaintiff's argument for April 30, 1991, as the date for commencement of the limitations period.

■ The discovery rule applies to contractual torts just as it applies to other torts. *Cassidy v. Derek Bryant Insurance Brokers, Ltd.*, 244 Ill. App. 3d 1054, 1064, 613 N.E.2d 1201 (1993). Therefore the limitations period for the tort alleged here did not begin until plaintiff knew, or reasonably should have known, of the breach of contract and its tortious inducement. *Hermitage Corp.*, 166 Ill. 2d at 86. "[T]he running of the statute of limitation commences when the injured person becomes [ ]possessed of sufficient information concerning his injury and its cause[ ] to put a reasonable person on notice to determine whether actionable conduct is involved." *Henderson v. Jones Brothers Construction Corp.*, 234 Ill. App. 3d 871, 873, 602 N.E.2d 16 (1992).

■ "[T]he question of the time at which a party has or should have requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact." *Goran v. Glieberman*, 276 Ill. App. 3d 590, 596, 659 N.E.2d 56 (1995). However, where the parties do not dispute the crucial facts, which compel only one conclusion, "[d]etermining at what point a party becomes possessed of sufficient information to be under an obligation to inquire further may be a question of law." *Henderson*, 234 Ill. App. 3d at 873.

■ Here, Wehrenberg admitted that Frankow told plaintiff of defendant's new policy, which adversely affected collections, on February 14, 1991. Wehrenberg also admitted that he took the call seriously enough that plaintiff began an investigation to determine whether defendant had caused injury to plaintiff's interests. At least by that point, plaintiff had "an obligation to inquire further to determine whether an actionable wrong was committed." *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981). Under these undisputed facts, the limitations period commenced on or before February 14, 1991, so it expired no later than February 14, 1996, 10 weeks before defendant received service.

■ For purposes of the motion to dismiss with prejudice, "the crucial inquiry is whether or not an examination of the plaintiff's actions following the expiration of the statute of limitations reveals a failure to exercise reasonable diligence." *Matthews v. Donnelly*, 265 Ill. App. 3d 1016, 1019, 639 N.E.2d 193 (1994). To determine whether a plaintiff has shown due diligence in effecting service, the court should consider several factors, including:

"(1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6)

special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant." *Segal v. Sacco*, 136 Ill. 2d 282, 287, 555 N.E.2d 719 (1990).

Plaintiff knew where to serve defendant at the time of filing and made no effort to serve for more than four months. Defendant had no knowledge of the pending action. Plaintiff argues that the 10-week delay is too short to permit dismissal of the complaint, especially in light of the special circumstance of plaintiff's need for the deposition of defendant's employee, Frankow, to support the allegations of the complaint.

■ Plaintiff contends that serving the complaint prior to Frankow's deposition would have violated its duties under Supreme Court Rule 137 (155 Ill. 2d R. 137). That rule requires the attorney filing any paper to certify "that he has read the pleading, motion or other paper[, and] that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." 155 Ill. 2d R. 137.

■ The summons plaintiff obtained in April 1996, and which plaintiff served on defendant, is not a paper of a party, because the clerk of court issues it, albeit at a party's request. Therefore Rule 137 does not apply to the summons or service. See *In re C.K.*, 214 Ill. App. 3d 297, 299-300, 573 N.E.2d 378 (1991). Plaintiff filed the complaint in December 1995; if plaintiff's attorney had by then failed to make sufficient inquiry to satisfy Rule 137, his later delay in effecting service in no way diminished the already completed violation of Rule 137.

Moreover, if Rule 137 could justify procuring the deposition of an opposing party's employee, without leave of court and without notice, that rule would conflict with discovery rules. Supreme Court Rule 201(d) provides that no party shall notice or otherwise initiate a deposition prior to the time that the defendant is required to appear, except by leave of the court granted upon good cause shown. 166 Ill. 2d R. 201(d). Committee comments indicate that our supreme court adopted this rule to end the objectionable practice of noticing depositions for the earliest possible date, that on which defendants were required to appear, leaving defendants inadequate time to prepare for the depositions. 166 Ill. 2d R. 201(d), Committee Comments. Plaintiff's explanation and use of the deposition of Frankow show that it intentionally obtained the deposition for use in this case, without leave of court in this case and far prior to the time required for defendant's appearance, in direct violation of Rule 201(d).

Our supreme court has established proper procedures for discovery that a potential plaintiff may need to determine whether

the facts justify filing suit against a potential defendant, so that the plaintiff may get the information necessary without violating Rule 137. *Yuretich v. Sole*, 259 Ill. App. 3d 311, 317, 631 N.E.2d 767 (1994). Under Supreme Court Rule 224 (134 Ill. 2d R. 224), even before filing suit a potential plaintiff may obtain discovery by filing a special action for discovery. The potential plaintiff, as petitioner, must then name as respondents the persons from whom he seeks discovery, and those respondents must receive notice and have an opportunity to contest the request for discovery.

Plaintiff here sought to escape the constraints of discovery rules to obtain discovery for this case without notice to defendant or its employee, Frankow, of the suit. Plaintiff's actions here constitute a special circumstance bearing on the motion to dismiss. The fact that defendant later hired the attorney for Wormald who attended Frankow's deposition provides scant mitigation for plaintiff's attempt to circumvent discovery rules. Even if plaintiff did not successfully obtain an unfair advantage over defendant, the record here amply supports the trial court's conclusion that plaintiff tried to obtain such an advantage.

Our supreme court has held that an inadvertent delay of 19 weeks in service of process did not warrant dismissal under Rule 103(b). *Segal*, 136 Ill. 2d at 288-89. Here, plaintiff delayed service for only 10 weeks after the expiration of the limitations period. However, the delay in service is only one of the factors the court should consider. Here, all the other factors weigh against plaintiff, especially the special circumstance that plaintiff obtained discovery for this case, after filing but before service and therefore without notice to defendant, in violation of discovery rules. The trial court did not abuse its discretion by dismissing the complaint with prejudice for failure to exercise diligence in obtaining service of process on defendant. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

RAKOWSKI and TULLY, JJ., concur.