2021 IL App (1st) 200653-U

Nos. 1-20-0653 & 1-20-0951

Order filed December 1, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| EDWARD SHROCK and BABY SUPERMALL, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 11405 |
| | ) | |
| UNION NATONAL BANK and JAY DEIHS, | ) | Honorable |
| | ) | Brigid M. McGrath and |
| Defendants-Appellees. | ) | Michael F. Otto, |
| | ) | Judges, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justice McBride and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1　*Held*: Circuit court's grant of judgment on the pleadings on plaintiffs' claims of fraud and breach of fiduciary duty and its dismissal of plaintiffs' claims of tortious interference with contract and conversion are affirmed where all claims are barred by the relevant statutes of limitations. Circuit court's dismissal of plaintiffs' claims for *respondeat superior* liability, prejudgment interest, and attorneys' fees is affirmed where plaintiffs' substantive claims are untimely.

¶ 2　On November 18, 2016, plaintiffs Edward Shrock and Baby Supermall, LLC (BSM), sued

Union National Bank and its vice president, Jay Deihs. Plaintiffs alleged that defendants aided

Robert Meier, BSM's former president and majority owner, in expropriating millions of dollars from BSM during a decade-long scheme beginning in 2003. The circuit court dismissed plaintiff's claims for conversion, tortious interference with contract, *respondeat superior* liability, prejudgment interest, and attorneys' fees. The court then granted judgment on the pleadings for defendants on plaintiffs' remaining claims of fraud and breach of fiduciary duty, finding that Shrock's release of a $11.16 million judgment against Meier in a 2009 lawsuit operated to release defendants in this case. We affirm.

¶ 3        I. BACKGROUND

¶ 4        BSM, an online retailer of baby products, was formed on October 21, 2003. Meier owned 87.5% of the company and Shrock owned 12.5%; BSM's operating agreement called for profits to be distributed to Meier and Shrock in those percentages. Meier was BSM's president and manager in charge of day-to-day operations and Shrock was, at least for some time, an employee responsible for maintaining BSM's website.

¶ 5        Beginning in 2003, Meier created a series of "profit-sharing" agreements between himself and BSM. Under these agreements, BSM paid Meier more than 87.5% of its profits in exchange for Meier deferring his salary and for personally guaranteeing BSM's debts. Meier also hired his girlfriend and her son as employees and paid them shares of BSM's profits. As a result, Meier and his family took more than 100% of BSM's profits, and BSM's balance sheet showed no-bottom line profits that could be distributed to Shrock. Plaintiffs allege that Meier's scheme lasted from 2003 through 2013, and that Meier and his family seized over $16 million from BSM, while Shrock received only $165,000.

¶ 6        A. The 2009 Lawsuit

¶ 7     Plaintiffs claim that when Shrock discovered Meier's scheme, he demanded that Meier return the money and Meier refused. On February 9, 2009, Shrock sued Meier, alleging essentially the facts set out above (the 2009 lawsuit). *Shrock v. Meier*, No. 09 L 1455 (Cir. Ct. Cook. Co. 2009).[1] On May 18, 2010, the trial court granted Shrock's motion to enjoin Meier and his family against taking payments from BSM under the "profit-sharing" plans that Meier created.

¶ 8     On March 8, 2011, Shrock filed another motion for an injunction to prohibit Meier from using BSM's funds to pay for his personal expenses. This motion accused Meier of using BSM as his "personal piggy bank" by paying approximately $1.4 million of company funds to his divorce attorneys and his ex-wife to settle his divorce, and by loaning himself $788,000 from BSM for personal use. On March 24, 2011, Meier filed a response, which acknowledged that the payments occurred but contended that they occurred prior to the 2010 injunction, and that they were proper under the "profit-sharing" agreements he created. Meier also stated that, "after speaking with the Bank [identified as 'Union Bank of Elgin'], it was determined that the best way to finance his" purchase of a personal residence was for Meier to borrow the purchase funds from BSM and repay the loan at a higher interest rate than BSM paid on its line of credit with Union National. Meier also filed an affidavit attesting to these facts. Shrock's reply indicated that he discovered the payments and loan to Meier in "excerpts from BSM's general ledger," which was "produced by Meier pursuant to a Rule 214 request."

---

[1] We glean the facts of the 2009 lawsuit from pleadings in the record on appeal that summarize the allegations and procedural history of that case and that contain filings from that case as exhibits. Moreover, we take judicial notice of the online docket report in the 2009 lawsuit issued by the clerk of the circuit court because the dates of several events in that case are relevant to the statute of limitations analysis. See *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 24 n. 4.

¶ 9      On March 5, 2014, a jury found that Meier willfully and wantonly violated his fiduciary duty to Shrock from 2003 through 2012 and awarded $10,025,000 in punitive damages.

¶ 10     Meier then filed for bankruptcy. *In re Robert J. Meier*, No. 14 BK 10105 (N.D. Ill. 2014). According to plaintiffs, bankruptcy litigation revealed a note that Deihs wrote to BSM's loan file on March 29, 2013, stating that "Baby Supermall had another strong year. Bob [Meier] utilizes the profit sharing expense which was $1.7MM last year as he still has disputes with the minority shareholder, Ed [Shrock], to avoid distributions." Plaintiffs claim that this note was not produced until the 2014 bankruptcy litigation because defendants, working with Meier's attorneys, refused to produce documents regarding BSM's loans during the 2009 lawsuit. In 2015, Shrock purchased Meier's ownership interest in BSM from the bankruptcy estate.

¶ 11     After the bankruptcy stay was lifted, on February 9, 2016, the trial court determined that Shrock incurred compensatory damages of $1,164,500 as a result of Meier's scheme. The court added the compensatory damages to $10,000,000 in punitive damages and entered judgment against Meier in the amount of $11,164,500.

¶ 12     On March 21, 2018, the trial court entered a partial satisfaction and release of judgment, drafted by Shrock's attorney, which stated:

> "On February 9, 2016, an $11,164,500 judgment was entered for Plaintiff Edward Shrock and against Defendant Robert J. Meier in the above-captioned case.
>
> In partial satisfaction of the judgment, Defendant Robert J. Meier transferred a residence at [address] to Plaintiff Edward Shrock. The full judgment amount has not been satisfied by Defendant Robert J. Meier.

Despite only a partial satisfaction, Plaintiff Edward Shrock hereby releases the $11,164,500 judgment against Defendant Robert J. Meier entered on February 9, 2016."

¶ 13    B. This Lawsuit

¶ 14    Approximately 16 months before Shrock released Meier, on November 18, 2016, Shrock and BSM filed the instant lawsuit against Union National Bank and bank vice president Jay Deihs. Plaintiffs ultimately filed a second amended complaint, which alleged counts of fraud, constructive fraud, aiding breach of fiduciary duty, intentional interference with contract, conversion, and *respondeat superior* liability. Plaintiffs claimed that Union National was BSM's bank during the entirety of Meier's scheme and that Deihs was responsible for handling BSM's business with the bank.

¶ 15    Specifically, plaintiffs alleged that defendants allowed Meier to use BSM as his "personal piggy bank" and to avoid profit distributions to Shrock. Between 2009 and 2010, Meier withdrew almost $2 million in four separate transactions from BSM's bank account to pay himself, his personal attorneys, his ex-wife, and his personal taxes. Eight days after the May 2010 injunction was entered, Meier wired himself $788,000 from BSM's bank account to buy a house. Also in 2010, defendants helped BSM obtain a $1.75 million loan, which Meier used to buy a house and finance his divorce. As a result of Meier's abuse of BSM's cash and credit, BSM became insolvent and sold most of its assets to pay creditors. Shrock lost nearly all the value of his BSM membership interest and did not receive BSM profit distributions.

¶ 16    Defendants filed motions to dismiss plaintiffs' second amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2018)). Defendants' section 2-619 motion argued that all of plaintiffs' claims were barred by the five-year

statute of limitations because those claims "began to accrue in 2003 and were known to Shrock no later than 2009 when Shrock filed his lawsuit against Meier," more than five years before plaintiffs filed this lawsuit. Defendants' section 2-615 motion argued that plaintiffs failed to state a claim for *respondeat superior* liability, and that Illinois law did not support plaintiffs' request for attorneys' fees or prejudgment interest. The circuit court denied defendants' section 2-619 motion with respect to "issues of assignment (standing) & UCC 4-406." The court granted defendants' section 2-615 motion and struck with prejudice plaintiffs' claims for conversion and *respondeat superior* liability and their requests for prejudgment interest and attorneys' fees. The record does not reflect the court's reasoning for its rulings.

¶ 17    Plaintiffs then filed their third amended complaint, which alleged essentially the same facts as the second amended complaint and counts of fraud, breach of fiduciary duty, and intentional interference with contract.

¶ 18    Defendants filed a section 2-619 motion to dismiss plaintiffs' third amended complaint, again arguing that plaintiffs' claims were untimely. Defendants also filed a section 2-615 motion to dismiss plaintiffs' third amended complaint, which argued plaintiffs had failed to state claims of intentional interference with contract because they did not allege defendants induced or caused Meier to breach a contract with Shrock. The circuit court denied defendants' section 2-619 motion without prejudice with respect to the statute of limitations argument. The court dismissed the counts of intentional interference with prejudice pursuant to section 2-615. The record does not reflect the court's reasoning for its rulings.

¶ 19    Defendants then filed a section 2-615(e) motion for judgment on the pleadings as to plaintiffs' remaining claims of fraud and breach of fiduciary duty, which argued that plaintiffs

failed to file suit within the five-year statute of limitations. Defendants contended that plaintiffs knew of those claims in 2009, when Shrock sued Meier, or by March 24, 2011, at the latest, when Meier's court filings confirmed that BSM was banking with Union National and that Union allowed an improper loan for Meier to buy a house, but plaintiffs did not file suit until November 18, 2016. Defendants also argued that Shrock's release of Meier in the 2009 lawsuit barred his claims against defendants in this case because both cases sought to recover the same damages.

¶ 20    In response, plaintiffs argued that the doctrine of adverse domination tolled the statute of limitations because Shrock, the minority owner of BSM, had no authority to bring a derivative lawsuit on BSM's behalf. As to the release, plaintiffs acknowledged that, at common law, a release of one wrongdoer from judgment releases all wrongdoers whose conduct produced a single injury. However, they contended that the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2018)) abrogated the common law rule; therefore, Shrock's release of Meier in the 2009 lawsuit did not release defendants in this case because defendants were not identified in that release. In reply, defendants argued that Shrock had both the motivation and the ability to sue Meier on BSM's behalf no later than March 2011, but did not file suit until November 2016; thus, plaintiffs' claims fell outside the five-year statute of limitations.

¶ 21    On March 27, 2020, the circuit court granted defendants' motion for judgment on the pleadings in a written opinion. The court found that plaintiffs were seeking to recover for the same loss at issue in the 2009 lawsuit. Citing *Cherney v. Soldinger*, 299 Ill. App. 3d 1066 (1998), the court concluded that Shrock's release of Meier was "absolute and unconditional" and "released the judgment in its entirety," including "any other parties which might be responsible for the injury." Quoting *Kinzer v. City of Chicago*, 128 Ill. 2d 437 (1989), the court explained that "so

long as there is a 'single indivisible injury,' a release of any party alleged to have caused the injury by breaching their fiduciary duty will operate to release any other parties also alleged to have caused the injury." The court did not address the statute of limitations.

¶ 22    On April 27, 2020, plaintiffs appealed the circuit court's grant of judgment on the pleadings, which initiated case number 1-20-0653.

¶ 23    Also on April 27, 2020, plaintiffs filed a motion to reconsider judgment on the pleadings pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2020)). Plaintiffs argued that the intent of the parties controlled whether Shrock had released Union National Bank and Deihs, and the parties expressed their intent in a settlement agreement that plaintiffs attempted to introduce during oral argument on the motion for judgment on the pleadings.[2] Plaintiffs contended that this settlement agreement established that Shrock intended to release only Meier and his family, not Union National Bank or Deihs. Plaintiffs attached the settlement agreement to their motion to reconsider. Shrock also attested that he never "contemplated releasing *** any other parties other than the specific parties" named in the settlement agreement. The record does not include defendants' response to plaintiffs' motion to reconsider or indicate whether they filed one.

¶ 24    On August 11, 2020, the circuit court denied plaintiffs' motion to reconsider. The court reasoned that plaintiffs' motion was "comprised almost exclusively of arguments Plaintiffs failed to make in opposition to the original motion" for judgment on the pleadings and found that those arguments had been waived. The court also concluded that, to the extent plaintiffs had not waived

_____

[2] No reports of proceedings are included in the record on appeal.

certain arguments, none of plaintiffs' arguments warranted reconsidering of judgment on the pleadings.

¶ 25    Plaintiffs timely appealed on September 9, 2020, which initiated case number 1-20-0951. The notice of appeal indicates that plaintiffs are challenging the circuit court's March 27, 2020, grant of judgment on the pleadings, the August 11, 2020, order denying plaintiffs' motion to reconsider judgment on the pleadings, and "[a]ny other order that was a procedural step to the foregoing orders." This appeal was consolidated with plaintiff's original appeal of April 27, 2020.

¶ 26    II. ANALYSIS

¶ 27    On appeal, plaintiffs contend that the circuit court erred in granting judgment on the pleadings, in denying their motion to reconsider judgment on the pleadings, and in dismissing their claims for conversion, tortious interference with contract, and *respondeat superior* liability, and their requests for prejudgment interest and attorneys' fees.

¶ 28    A. Judgment on the Pleadings

¶ 29    The circuit court entered judgment on the pleadings in favor of defendants as to plaintiffs' claims of fraud and breach of fiduciary duty. Judgment on the pleadings is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14. We review judgment on the pleadings *de novo*. *Id.*

¶ 30    Defendants maintain that we should affirm the circuit court's entry of judgment on the pleadings because, *inter alia*, plaintiffs filed this lawsuit after the statute of limitations for claims of fraud and breach of fiduciary duty expired. Although the circuit court did not address the statute

of limitations, we may affirm on any basis in the record. *People ex rel. Department of Human Rights v. Oakridge Healthcare Center, LLC*, 2020 IL 124753, ¶ 36.

¶ 31    1. Discovery Rule

¶ 32    The statute of limitations for claims of breach of fiduciary duty and common law fraud is five years. *Richter v. Prairie Farms Dairy, Inc.*, 2015 IL App (4th) 140613, ¶ 41 (fraud); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 618 (2007) (breach of fiduciary duty). Under the discovery rule, the statute of limitations does not begin to run until the plaintiffs knew or reasonably should have known of their injury and that it might have been wrongfully caused. *Fuller Family Holdings*, 371 Ill. App. 3d at 618. The question is when the plaintiffs developed "a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Dancor Intern., Ltd. v. Friedman, Goldberg, & Mintz*, 288 Ill. App. 3d 666, 672 (1997). It does not matter whether the plaintiffs knew or suspected *who* the wrongdoer was because knowledge than an injury has been wrongfully caused does not require knowledge of a specific defendant's wrongful conduct. *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13. Under the discovery rule, the determination of when the limitations period began running is generally a question of fact. *Fuller Family Holdings*, 371 Ill. App. 3d at 618. However, we may address the question as a matter of law when the answer is clear from the pleadings. *Id.*

¶ 33    The issue in this case is when plaintiffs had sufficient information to reasonably believe that they had suffered an injury and that it was wrongfully caused. If the answer is more than five years before they filed this lawsuit on November 18, 2016, then their claims of fraud and breach of fiduciary duty are time-barred.

¶ 34    Plaintiffs must have learned of Meier's scheme and the financial losses it caused by February 9, 2009, because that is when Shrock sued Meier. The misconduct and financial injury alleged in the 2009 lawsuit is the same as in this lawsuit, *i.e.*, expropriation of funds from BSM for Meier's personal use to the detriment of the company and Shrock. Thus, plaintiffs knew of their injury and that it was wrongly caused no later than February 9, 2009. Under the discovery rule, the five-year statute of limitations for plaintiffs' claims of fraud and breach of fiduciary duty expired on February 9, 2014. Plaintiffs filed this lawsuit on November 18, 2016. Thus, their claims of fraud and breach of fiduciary duty are time-barred.

¶ 35    Plaintiffs contend that they did not discover defendants' involvement in Meier's scheme until bankruptcy litigation in 2014 or 2015, when Deihs's note to BSM's loan file was produced. However, that is not the relevant inquiry under the discovery rule. We have repeatedly rejected the notion that the identity of the party who caused the plaintiffs' injury is a prerequisite to the running of the statute of limitations. *Guarantee Trust Life Ins. Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 30. Rather, the question is when plaintiffs learned of their own financial loss and that it was wrongfully caused. See *Janousek*, 2015 IL App (1st) 142989, ¶ 13. As explained above, that cannot have been any later than February 9, 2009.

¶ 36    Even if the issue *was* when plaintiffs learned of defendants' involvement specifically, filings from the 2009 lawsuit, which are included in the record on appeal, indicate that plaintiffs had reason to know of defendants' involvement in Meier's scheme more than five years before they filed this lawsuit. Shrock's March 8, 2011, motion for an injunction accuses Meier of obtaining millions of dollars from BSM's bank account for his personal use. Shrock clearly recognized that this behavior was improper; that is why he filed a motion for an injunction to stop

it. Thus, Shrock's own motion indicates that, in March 2011, he should have inquired as to why BSM's bank allowed Meier to withdraw substantial amounts of non-salary funds from the company's account.

¶ 37    Moreover, Meier's March 24, 2011, filings confirmed that BSM was banking with "Union Bank" in Elgin, which is where Union National Bank is located, and admitted that Meier had received direct payments from BSM's bank account. Most importantly, Meier explicitly stated that he financed the purchase of his personal residence using a loan from BSM and BSM's line of credit "after speaking with the Bank." This admission confirmed that Meier using BSM's finances for his personal benefit and that Union National was advising him to do so. In addition, Shrock's reply stated that he had received BSM's general ledger in discovery, and it showed that hundreds of thousands of dollars came directly from BSM's "Cash in Bank" account to pay for Meier's personal expenses. These filings all but described the allegations in this lawsuit, which plaintiffs did not file until November 2016.

¶ 38    Altogether, the record on appeal establishes that, by March 24, 2011, plaintiffs had sufficient information to conclude that Union National Bank was allowing and assisting Meier's improper use of BSM's bank account and its credit. Thus, at the very latest, the statute of limitations for plaintiffs' claims of fraud and breach of fiduciary duty expired on March 24, 2016. Plaintiffs filed suit on November 18, 2016, so these claims are time-barred.

¶ 39    We reached a similar conclusion in a related case, *Shrock v. Ungaretti & Harris, Ltd.*, 2019 IL App (1st) 181698. On November 18, 2016, the same day as they filed the case at bar, Shrock and BSM sued Meier's attorneys, alleging that they aided Meier in violating the injunction in the 2009 lawsuit. *Shrock*, 2019 IL App (1st) 181698, ¶¶ 1, 40. The trial court dismissed plaintiffs'

claims as barred by the statute of limitations and we affirmed. *Id.* ¶ 1. We applied the discovery rule to the two-year statute of limitations for claims of attorney misconduct under section 13-214.3(b) of the Code of Civil Procedure (735 ILCS 5/13-214.3(b) (West 2016)). *Id.* ¶ 49. We found that Shrock's filings in the 2009 lawsuit and in Meier's bankruptcy litigation established that, by August 2013, he had sufficient information to know that Meier was violating the injunction and, by November 7, 2014, to know that Meier's attorneys assisted him in doing so. *Id.* ¶ 63. Thus, plaintiffs filed suit more than two years after the relevant statute of limitations expired and their claims were time-barred. In the instant case, although the statute of limitations is five years instead of two, the logic is the same. Because plaintiffs did not sue defendants until more than five years after they discovered their financial injury, plaintiffs' claims of fraud and breach of fiduciary duty are barred by the statute of limitations.

¶ 40    2. Fraudulent Concealment

¶ 41    Plaintiffs argue that fraudulent concealment tolls the statute of limitations under section 13-215 of the Code of Civil Procedure (735 ILCS 5/13-215 (West 2016)). Section 13-215 applies if "a plaintiff pleads and proves that fraud prevented discovery of the cause of action." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 76 (2006). "Illinois courts have consistently interpreted section 13-215 to apply only to fraudulent concealment of causes of action" and not to the identity of a defendant. *Levine v. EBI, LLC*, 2013 IL App (1st) 121049, ¶ 21. In other words, "[w]hen the tortfeasor fraudulently conceals the identify of the tortfeasors, and the tortfeasor does not conceal the fact that the plaintiff suffered an injury, section 13-215 does not allow the plaintiff an extension of the limitations period for filing his claim." *Id.*

¶ 42     Plaintiffs' third amended complaint alleges that fraudulent concealment tolls the statute of limitations because, until June 22, 2016, Meier insisted that he had not received any funds from BSM and that BSM was simply "accruing" amounts that would be paid to him later. The record on appeal shows that this is untrue. Meier's March 24, 2011, filings explicitly stated that Meier had *already* received payments from BSM's bank account and that he was using BSM's credit to finance the purchase of his home because Union National Bank told him to. Plaintiffs' third amended complaint directly quotes these filings. Thus, plaintiffs' own complaint belies their attempt to plead fraudulent concealment. To the extent that plaintiffs now suggest that defendants' refusal to produce documents caused plaintiffs' failure to timely assert their claims, silence by defendants does not relieve plaintiffs from acting on what they knew from Meier's filings of March 24, 2011. See *Kribbs*, 2016 IL App (1st) 160672, ¶ 41. Thus, fraudulent concealment does not toll the statute of limitations.

¶ 43     3. Equitable Estoppel

¶ 44     Similarly, plaintiffs contend that equitable estoppel tolls the statute of limitations because "[t]he conspiracy lasted through at least 2015, when Union revealed the note indicating their complicity" and defendants cannot raise the statute of limitations as a defense when their own actions caused plaintiffs' delay in filing suit.

¶ 45     When a plaintiff alleges a defendant misled him into filing outside the applicable statute of limitations, he seeks relief under principles of equitable estoppel. *Klancir v. BNSF Ry. Co.*, 2015 IL App (1st) 143437, ¶ 21. " 'The party claiming estoppel has the burden of proving it by clear and unequivocal evidence.' " *Id.* (quoting *Steinmetz v. Wolgamot*, 2013 IL App (1st) 121375, ¶ 40). To demonstrate equitable estoppel barring a statute of limitations defense,

plaintiffs must show: (1) the defendants misrepresented or concealed material facts; (2) the defendants knew at the time the representations were made that they were untrue; (3) the plaintiffs did not know that the misrepresentations were untrue when they were made and acted upon; (4) the defendants intended or reasonably expected that the plaintiffs would act on the misrepresentations; (5) the plaintiffs reasonably relied on the misrepresentations in good faith to their detriment; and (6) the plaintiffs were prejudiced by their reliance on the misrepresentations. *Hanmi Bank v. Chuhak & Tecson, P.C.*, 2018 IL App (1st) 180089, ¶ 23.

¶ 46    Plaintiffs cannot establish equitable estoppel by clear and unequivocal evidence. To the extent that defendants' alleged refusal to produce documents during the 2009 lawsuit constituted a "representation" that they were not involved in Meier's scheme, plaintiffs cannot not have relied in good faith on that representation. Meier's March 2011 filings essentially confirmed defendants were involved and claimed that Meier's use of BSM's credit to buy a house was the bank's idea. While Shrock may not have understood the significance of Meier's March 24, 2011, filings, defendants did nothing that prevented plaintiffs from filing suit against them at that time. Thus, plaintiffs have failed to establish that equitable estoppel applies.

¶ 47    4. Continuing Violation Rule

¶ 48    Plaintiffs next argue that, under the continuing violation rule, the statute of limitations "runs from the last continuing tort," which "extended through 2014." Breach of fiduciary duty is not a tort, so the continuing violation rule does not apply to those claims. See *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 33.

¶ 49    However, plaintiffs do allege torts in their claims of common law fraud. See *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 761 (1993) ("the tort of common-law fraud is primarily

addressed to the invasion of economic interests."). "[U]nder the 'continuing tort' or 'continuing violation' rule, 'where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.'" *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002)). The rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form a pattern of wrongdoing. *Belleville Toyota*, 199 Ill. 2d at 348-49. Our supreme court has not adopted "a continuing violation rule of general applicability in all tort cases." *Id.* at 347.

¶ 50    We have found no binding authority that applies the continuing violation rule to all claims of common law fraud, and we do not believe that the rule applies in this case.[3] Plaintiffs' pleadings broadly allege that Meier's scheme ran from 2003 to 2013 or 2014, and that Union National was BSM's bank during that time. However, plaintiffs also allege distinct transactions that defendants allowed or aided. For example, plaintiffs allege that, between November 2009 and April 2010, Meier transferred almost $2 million from BSM's Union National Bank account to pay himself, his attorneys, his ex-wife, and his personal taxes. After the injunction was entered in May 2010, defendants allowed Meier to wire himself $788,000 to buy a house, then assisted him in obtaining a $1.75 million loan for BSM that defendants knew Meier would use to finance his divorce. Each of these is a distinct instance of misconduct. Plaintiffs' claims of fraud do not depend on Meier,

---

[3] We acknowledge that the Second District applied to the continuing violation rule to a "scheme to defraud" (*Sommer v. United Sav. Life Ins. Co.*, 128 Ill. App. 3d. 808, 817 (1984)), and the Fifth District applied the rule to a bank's monthly deposits of checks into an unauthorized account (*Field v. First Nat. Bank of Harrisburg*, 249 Ill. App. 3d 822, 826 (1993)). However, both cases predate our supreme court's opinion in *Belleville Toyota*, and the opinion of one district of the appellate court is not binding on other districts. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). We do not believe that the Illinois Supreme Court's citation of *Field* in *Feltmeier* as an illustration of historical case law constitutes a holding that binds us in this case.

Union National, and Deihs's pattern of behavior, and the ongoing nature of those acts did not prevent plaintiffs from suing Union National and Deihs along with Meier. Thus, the continuing violation rule does not apply.

¶ 51    Our decision in *Kidney Cancer Ass'n v. North Shore Community Bank and Trust Co.*, 373 Ill. App. 3d 396 (2007) supports this conclusion. In that case, the plaintiff alleged that the defendant bank allowed the plaintiff's director to set up an account into which the director deposited checks intended for the plaintiff, then withdrew funds from the account for his own personal use. *Kidney Cancer Ass'n*, 373 Ill. App. 3d at 398. The trial court dismissed the complaint as untimely and we affirmed, finding that "the continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Id.* at 405. Just as the plaintiff in *Kidney Canncer Ass'n* could have sued the bank for its role in each conversion, plaintiffs in this case could have sued Union National and Deihs for aiding each breach of Meier's fiduciary duties. Thus, the continuing violation rule does not apply to this case. See *Belleville Toyota*, 199 Ill. 2d. at 348. Plaintiffs' claims are untimely.

¶ 52    5. Adverse Domination

¶ 53    Finally, plaintiffs argue that BSM's statute of limitations was tolled under the adverse domination doctrine. The adverse domination doctrine tolls the statute of limitations for claims by a corporation against its officers during the time the corporation is controlled by those officers. *Lease Resolution Corp. v. Larney*, 308 Ill. App. 3d 80, 86 (1999). The doctrine creates a rebuttable presumption that the corporation does not "know" of its own injuries when it is controlled by the officers who caused those injuries. *Id.* at 90. This presumption may be rebutted by evidence that someone other than the wrongdoing officers knew of the cause of action and

had both the ability and motivation to bring suit. *Id.* The doctrine also applies to claims against non-corporate actors who conspired with or aided the wrongdoing officers because wrongdoing officers are unlikely to sue non-corporate actors who are helping them commit misconduct. *Id.* at 89-90.

¶ 54    We rejected BSM's assertion of adverse domination in the lawsuit against Meier's attorneys (*Shrock*, 2019 IL App (1st) 181698, ¶ 85) and we reject it again here. Shrock had knowledge of BSM's potential claims against defendants in February 2009, and certainly no later than March 24, 2011. There is no doubt Shrock had "the motivation to bring suit" against defendants at that time. See *Id.* In fact, Shrock had already filed the 2009 lawsuit against Meier seeking to recover for financial harm that Meier caused by the depletion of BSM's bank account and the use of its credit. Shrock also filed multiple motions seeking to enjoin Meier from taking BSM's funds for his personal use.

¶ 55    In addition, Shrock had the ability to bring suit on behalf of BSM at the relevant time. Section 40-1 of the Limited Liability Company Act, which governed BSM (see 805 ILCS 180/15-1 (West 2008)), provides that "[n]o action shall be brought by a member *** in the right of a limited liability company to recover a judgment in its favor unless members or managers with authority to do so have refused to bring the action or unless an effort to cause those members or managers to bring the action is not likely to succeed." 805 ILCS 180/40-1 (West 2008).

¶ 56    In both 2009 and 2011, Meier was BSMs' sole manager with exclusive authority to initiate litigation, and "there is simply no possibility that Meier, had he been asked by Shrock, would have authorized" a lawsuit alleging that Union National and Deihs helped him expropriate

millions of dollars from BSM's bank account for his personal use. See *Shrock*, 2019 IL App (1st) 181698, ¶¶ 81-83. "Because a request to authorize this litigation could have been hopelessly futile, Shrock was entitled, under section 40-1, to file a lawsuit on BSM's behalf against" Union National Bank and Deihs. See *Id.* ¶ 84. No later than March 24, 2011, Shrock knew that defendants were allowing Meier to misuse BSM's bank assets. "Thus, at that point in time, Shrock could have initiated a derivative action on behalf of BSM against defendants." See *Id.* Because Shrock had the motivation, ability, and knowledge to bring a cause of action against defendants before the five-year window expired, the adverse-domination presumption is rebutted. As a result, that doctrine does not toll the running of BSM's statute of limitations. Accordingly, we affirm the circuit court's grant of judgment on the pleadings with respect to plaintiffs' claims of fraud and breach of fiduciary duty on the grounds that those claims were barred by the relevant statutes of limitations.

¶ 57    B. Dismissed Claims

¶ 58    Plaintiffs also challenge the circuit court's dismissal of their claims for conversion, intentional interference with contract, and *respondeat superior* liability, and their requests for prejudgment interest and attorneys' fees. Defendants moved for dismissal of these claims pursuant to sections 2-615 and 2-619; the circuit court dismissed them pursuant to section 2-615. Plaintiffs preserved their dismissed claims for conversion, intentional interference with contract, *respondeat superior* liability, prejudgment interest, and attorneys' fees pursuant to *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150 (1983) in their third amended complaint.

¶ 59    We may affirm a dismissal on any basis apparent in the record regardless of the circuit court's reasoning and regardless of whether the circuit court relied on section 2-615 or section 2-

619. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17; *Joseph v. Collis*, 272 Ill. App. 3d 200, 206 (1995). Our review is *de novo* under either section. *Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 338 Ill. App. 3d 156, 164 (2003).

¶ 60    A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint on its face. *Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 15. The question is whether the facts alleged, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences as true, are sufficient to state a cause of action upon which relief may be granted. *Id.* at ¶ 16. The circuit court should only grant a section 2-615 motion to dismiss if no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The court only considers facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill. 2d 381, 385 (2005).

¶ 61    A section 2-619 motion to dismiss " 'admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the complaint's face or that are established by external submissions acting to defeat the complaint's allegations.' " *Kribbs*, 2016 IL App (1st) 160672, ¶ 27 (quoting *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1029 (2006). One such defense is "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). A section 2-619 motion should be granted when a "plaintiff's claim can be defeated as a matter of law or on the basis of easily proven issues of fact." *Gadson v. Among Friends Adult Day Care, Inc.*, 2015 IL App (1st) 141967, ¶ 14.

¶ 62    1. Conversion and Tortious Interference with Contract

¶ 63    Plaintiffs' second amended complaint alleged counts of conversion. Essentially, plaintiffs alleged that defendants assisted Meier in converting BSM's funds, some of which should have flowed to Shrock as profit distributions, for his personal use. The statute of limitations for conversion is five years. See 735 ILCS 5/13-205 (West 2002); *Kribbs*, 2016 IL App (1st) 160672, ¶ 23; see also *One Fish Two Fish, LLC v. Struif*, 2021 IL App (1st) 191441, ¶ 45 (not yet released for publication and subject to revision or withdrawal). The discovery rule applies to conversion claims. *One Fish Two Fish*, 2021 IL App (1st) 191441, ¶ 45.

¶ 64    The third amended complaint alleged counts of "intentional interference," which essentially claimed that defendants interfered with BSM's operating agreement by allowing Meier to avoid paying profit distributions to Shrock. Plaintiffs' brief discusses these claims in the context of "inducements of breaches of contract" and "interference with the third party's performance of the contract." Thus, we construe these counts as alleging of tortious interference with contract. The statute of limitations for tortious interference with contract is five years. *Federal Signal Corp. v. Thorn Automated Systems, Inc.*, 295 Ill. App. 3d 762, 767 (1998). The limitations period generally begins to run on the date of breach, but the discovery rule applies to contractual torts just as it does to other torts. *Id.* at 766-67.

¶ 65    Plaintiffs' claims for conversion and tortious interference with contract are time-barred for the same reasons as their claims for fraud and breach of fiduciary duty. As explained above, plaintiffs must have discovered their injury by February 9, 2009, when Shrock sued Meier. Thus, the statute of limitations for claims of tortious interference with contract and conversion expired on February 9, 2014, more than two years before plaintiffs filed this lawsuit.

¶ 66    Moreover, plaintiffs' third amended complaint alleges that "[i]n a 2010 [*sic*] affidavit in Shrock's case, Meier tried to explain why he used BSM's money to buy the house. Meier claimed he 'spoke with the Bank' and 'it was determined' that Meier would 'borrow the money from' BSM." It is reasonable to infer that this allegation quotes Meier's March 24, 2011, filings, which were attached as exhibits to defendants' motion to dismiss plaintiffs' third amended complaint. Viewed in the light most favorable to plaintiffs, these pleadings establish that, by March 24, 2011, plaintiffs knew or should have known that Union National was inducing Meier to breach BSM's operating agreement, to which Shrock was a party. Plaintiffs also knew or should have known that Meier's was converting BSM's funds for his personal use at the advice of Union National because Meier's filings said as much. Plaintiffs did not file suit against defendants until November 18, 2016, more than five years later. Accordingly, plaintiffs' claims of tortious interference with contract are and conversion time-barred and were properly dismissed.

¶ 67    2. *Respondeat Superior* Liability

¶ 68    Plaintiffs' second amended complaint alleged that "Union Bank was responsible for Deihs'[s] actions under the doctrine of *respondeat superior*. Also, because Deihs was a Senior Vice President, his actions as a high ranking officer should be imputed to Union Bank." As explained above, Deihs cannot be liable on any of plaintiffs' substantive claims because those claims are untimely. Accordingly, Union National Bank cannot be liable for Deihs's actions under *respondeat superior*. Thus, we have no basis to reverse the circuit court's ruling on this issue.

¶ 69    3. Prejudgment Interest and Attorneys' Fees

¶ 70    Finally, plaintiffs argue that the circuit court erred in striking their requests for prejudgment interest and attorneys' fees. "Prejudgment interest may be recovered when warranted by equitable considerations" *Jones v. Hryn Development, Inc.*, 334 Ill. App. 3d 413, 418 (2002). For example, "[t]he rationale underlying an equitable award of prejudgment interest in a case involving a breach of fiduciary duty is to make the injured party complete by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money." *In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989). Because all of plaintiffs' substantive claims are time-barred for the reasons outlined above, plaintiffs have not and cannot obtain any money judgment to which prejudgment interest could apply. Similarly, under Illinois law, a successful litigant may only recover attorneys' fees if provided for by contract or statute. *Taylor v. Pekin Ins. Co.*, 231 Ill. 2d 390, 398-99 (2008). Plaintiffs cannot be successful litigants and therefore cannot be entitled to attorneys' fees. Accordingly, we have no basis to reverse the circuit court's judgment on these issues.

¶ 71    III. CONCLUSION

¶ 72    Because we affirm on the grounds that plaintiffs' claims are barred by the statute of limitations, it is not necessary to address defendants' other basis for affirming the circuit court's grant of judgment on the pleadings regarding Shrock's release of judgment.

¶ 73    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 74    Affirmed.